```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

Wilmington Trust Company, et    :
    al.,
                                :
      Plaintiffs,
                                :
    v.                                    Case No.  2:13-cv-01213
                                :
AEP Generating Company, et               JUDGE EDMUND A. SARGUS, JR.
    al.,                        :        Magistrate Judge Kemp

      Defendants.               :


                         OPINION AND ORDER

    Plaintiffs, various entities identified as "Wilmington Trust Company" acting as owner trustees of various trusts, brought this breach of contract action against Defendants AEP Generating Company and Indiana Michigan Power Company, which are operating power plants on premises leased from Plaintiffs.  Plaintiffs claim that Defendants breached contractual and other duties owed to Plaintiffs when they entered into and subsequently modified a consent decree in an environmental action case which had been filed against Defendants by the United States Environmental Protection Agency, and which affected the future operation of the power plants in question.

    During discovery, Plaintiffs requested documents reflecting communications between Defendants and the EPA which occurred during the negotiations leading up to the consent decree. Defendants responded by raising a "settlement privilege" objection.  That led to the filing of a motion to compel.  In an Opinion and Order filed on February 13, 2015, the undersigned Magistrate Judge granted the motion, finding that, based on the parties' arguments, the privilege - a creature of federal common law - did not apply in this diversity action due to the operation of Fed.R.Evid. 501.  See Doc. 79.

Defendants moved for reconsideration of that order. In that motion, they raised, for the first time, an argument which, if accepted, would lead to the application of the federal settlement privilege in this case through an analysis which involves using New York choice of law principles under Rule 501. The District Judge overruled the motion to reconsider as it related to the issues actually presented and decided in the February 13, 2015 Opinion and Order, but recognized that Defendant's additional argument had not been ruled on and recommitted the matter to the Magistrate Judge to consider it. See Doc. 90. The parties have each filed supplemental briefs on the issue. For the following reasons, the Court will reinstate its order granting the motion to compel.

## I. Background

As the Court explained more fully in its prior Opinion and Order, at issue here is Plaintiffs' Document Request Number 7, which reads as follows:

> Produce all communications between the principal AEP representatives involved in AEP I and AEP II and other Environmental Action Parties concerning the Environmental Action Parties' analyses and discussions of potential remedies and settlement of AEP I and AEP II, including without limitation the communications relating to the negotiation and entry into the 2007 Consent Decree, the 2013 Consent Decree Modification, and any settlement or potential settlement of AEP I or AEP II.

(Doc. 58-2 at Req. No. 7). Defendants objected, stating:

> In addition to the foregoing General Objections, which are incorporated herein, Defendants object to this request on the ground that it is overly broad and unduly burdensome to the extent that it seeks "all communications" between "principal AEP representatives involved in AEP I and AEP II and other Environmental Action Parties" concerning negotiations related to settlement or potential settlement of AEP I and AEP II. Defendants further object to this request to the extent that the materials called for constitute communications in furtherance of settlement and are therefore

-2-

protected from disclosure.

(Doc. 58-3 at Resp. to Req. No. 7).

In the prior briefing on the issue, the parties did raise the question of whether the federal settlement communications privilege applied.  Defendants contended that the Sixth Circuit Court of Appeals' decision in Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc., 332 F.3d 976 (6th Cir. 2003) required the federal settlement privilege to be applied even in diversity actions.  This Court held that in light of an overwhelming body of law, including cases like In re Powerhouse Licensing, LLC, 441 F.3d 467 (6th Cir. 2006), Maday v. Pub. Libraries of Saginaw, 480 F.3d 815 (6th Cir. 2007),  Surles ex rel. Johnson v. Greyhound Lines, Inc., 474 F.3d 288 (6th Cir. 2007), and Corrigan v. U.S. Steel Corp., 478 F.3d 718, 723 (6th Cir. 2007), all of which followed the typical analysis required by Rule 501 and applied the state law of privilege in diversity cases, no different analysis should apply here.  Because Ohio and New York seemed to be the only two States whose law might apply under Rule 501, and because neither State has recognized a settlement communication privilege (nor did Defendants argue that they did), the Court overruled Defendants' objection to producing the documents based on that privilege.

## II. Discussion

The Court starts with a summary of Defendants' argument.  It rests on six sequential propositions:

   (1) Rule 501 requires the Court to use the choice of law provisions from whichever State's law applies;

   (2) New York's conflict of law provisions apply here because the case was originally filed in New York;

   (3) Under New York's conflict of law provisions, the law of privilege is governed by the law of the jurisdiction in which the privileged communications were made;

>      (4) Here, that jurisdiction is actually "federal
> law jurisdiction";
>
>      (5) Federal law recognizes a settlement
> communications privilege; therefore,
>
>      (6) Defendants properly objected to producing
> their settlement communications.

The Court will examine each of these assertions in turn.  Should any one of them prove inaccurate, Defendant's entire argument fails.

### A. Rule 501

Fed.R.Evid. 501 says that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."  Defendants are correct that the Rule does not simply direct a federal court to apply the law of privilege of the state in which the case was filed; that is an overly simplistic approach and not consistent with the Rule. Rather, "that Rule provides no explicit guidance as to which state's law regarding privilege is to be applied in a diversity case."  Samuelson v. Susen, 576 F.2d 546, 549 (3d Cir. 1978). That choice is, as Defendants posit, governed by the choice of law rules of the forum state.  "A federal court, sitting in diversity, must look to the choice-of-law rules of the state in which it sits ... to resolve conflict-of-law questions" including questions about the applicability of evidentiary privileges. AroChem Intern., Inc. v. Buirkle, 968 F.2d 266, 269-70 (2d Cir. 1992); see also Cline v. Reliance Trust Co., 2005 WL 6567357, *2 (N.D. Ohio Oct. 31, 2005).  Consequently, New York's choice of law provisions apply.

### B. New York's Conflict of Law Provisions

In Condit v. Dunne, 225 F.R.D. 100, 107 (S.D.N.Y. 2004), the court explained how New York's conflict of law provisions work in a case like this one:

> New York courts initially evaluate whether a true conflict between the laws of different states exists. <u>Norlin Corp. v. Rooney, Pace, Inc.</u>, 744 F.2d 255, 264 (2d Cir.1984) ("[W]hen the interests of only one state are truly involved, the purported conflict is purely illusory. Thus, there is no reason why the law of the forum state should not control."). If a true conflict exists, New York courts then apply an interest-balancing test to determine which state has the greatest interest in applying its law.

As a further explanation of this analytical model, the Court notes this language from <u>AroChem, supra</u>, at 270: "In deciding which state has the prevailing interest, we look only to those facts or contacts that relate to the purpose of the particular laws in conflict."  After noting that application of these principles differs depending upon whether the matter at issue involves "conduct" or "loss allocation," <u>AroChem</u> concluded that the privilege at issue (a judicial proceeding privilege which purportedly covered statements made during the course of litigation, including in settlement negotiations) was "conduct-regulating."  That being so, under New York law, the law of the "locus state" controlled on the issue of privilege.  The statements in question were made in California, so California law applied.

    Here, it may not be possible to determine where each of the statements which Plaintiffs seek to discover were made.  Certainly, some settlement discussions took place in Ohio, but others may have originated elsewhere.  But, looking at the issue from a strictly geographic point of view, it would not seem to matter.  In its prior Opinion and Order, the Court concluded that neither New York nor Ohio recognized the privilege which Defendants asserted under <u>Goodyear</u>.  Defendants do not argue otherwise in their supplemental memorandum.

    What they do argue is that the resolution of this issue is

not strictly a matter of geography.  In support of this argument, they first cite to a New York case, <u>A.I.A. Holdings, S.A. v. Lehman Bros., Inc.</u>, 1999 WL 61442 (S.D.N.Y. Feb. 3, 1999), which applied Lebanese law to an issue of attorney-client privilege, as an example of a case in which New York courts recognized that the law which can be chosen to govern a privilege issue is not limited to the law of one of the fifty U.S. states.  That case, of course, also chose a geographic location - Lebanon - as the place with the most significant interests to be considered, and found that it was the place where the communications in question were made, so it is not much help to Defendants.  Their second argument, however, is that the policies behind New York's conflict of law rule relating to allegedly privileged communications are best served by considering the statements at issue in this case to have been made, in some metaphysical way, under federal jurisdiction - presumably because they were made in the context of a case litigated in a federal court on federal legal theories.  Defendants stress that New York considers the parties' expectations about the confidentiality of their statements to be of great significance, and also defers to the interest of the other locality in keeping these matters private.  Here, Defendants assert that, in reliance on <u>Goodyear</u>, the parties to the consent decree expected that their settlement communications would remain private and that <u>Goodyear</u> and similar decisions are evidence of a strong federal policy in maintaining the secrecy of settlement communications.

    Plaintiff's relatively succinct response to this argument (apart from explaining how policy considerations are irrelevant to the analysis and, even if they were relevant, they favor applying New York law) is this: "Defendants [do not] offer ... a *single case* in which a federal court, sitting in a diversity case, has construed Rule 501 to permit reference to federal

common law, instead of state law, to determine whether an asserted privilege should be recognized." Plaintiffs' Supplemental Memorandum, Doc. 105, at 6 (emphasis in original). They are correct. The Court's research has not located any such cases, and if they exist, the Court is fairly confident Defendants would have brought them to the Court's attention. Further, the Advisory Committee Notes to the adoption of Rule 501 clearly state that "federal law should not supersede that of the States in substantive areas such as privilege absent a compelling reason" and that "in civil cases in the federal courts where an element of a claim or defense is not grounded upon a federal question, there is no federal interest strong enough to justify departure from State policy." Choosing federal law here would seem to run directly contrary to this persuasive description of Rule 501's intent and purpose.

This Court is not inclined to break new ground by concluding that, under a conflict of laws analysis which emphasizes the geographic location of a communication as the predominant factor, geography should be scrapped in favor of "federal jurisdiction" whenever the communications at issue were made in the context of a federal lawsuit. If that rule were applied to all communications - and it is hard to see where the limits of Defendants' proposed rule would be - it would require applying the federal common law of privilege in a host of diversity cases and would cover any communications made in the context of federal-question litigation, including, for example, attorney-client communications, even though a Rule 501 analysis of the attorney-client issue normally results in the application of some state's (or country's) law instead of federal common law. There is little to commend such an approach.

Further, even if the Court went down the "policy considerations" road, the result would not necessarily be the one which Defendants advocate. Federal law, taken as a body, does not unequivocally favor a settlement communications privilege.

As the Court of Appeals for the Federal Circuit said in <u>In re MSTG, INC.</u>, 675 F.3d 1337, 1342 (Fed. Cir. 2012), the Court of Appeals for the Sixth Circuit "appears to be the only one of our sister circuits to adopt such a privilege."  That decision (which itself refused an invitation to create a settlement communications privilege) noted that other federal Courts of Appeals had expressly declined to recognize such a privilege and that "there is no state consensus as to a settlement negotiation privilege."  <u>Id</u>. at 1343.  It also addressed the "parade of horribles" which would supposedly result from the refusal to recognize the privilege and concluded that Fed.R.Civ.P. 26 gives the courts ample tools with which to protect parties from any significant untoward consequences which might otherwise accompany the disclosure of relevant settlement communications.  This Court fully endorses that conclusion.

    Additionally, it is, as Plaintiffs correctly state, mere speculation as to whether Defendants actually relied on some notion that <u>Goodyear</u> would protect their settlement communications should they become involved in subsequent litigation where state law supplied the applicable rule of decision and Rule 501 directed the court to look to state law for guidance on what privileges to recognize.  If Defendants did so rely, that was not necessarily reasonable.  Further, Rule 26 confines Plaintiffs' requests to communications relevant to the issues in this case, and if there is a good faith basis for doing so, Defendants can designate all or portions of such relevant communications as confidential.  The Court simply does not view its decision as eroding the general confidentiality of settlement communications, especially when the circumstances under which they can be deemed relevant to litigation involving someone not a party to the communications seem fairly limited.  For all of these reasons, the Court does not find Defendants' argument persuasive, and again orders Defendants to respond to the document request at issue within thirty days.

      IV. <u>Procedure for Reconsideration</u>

 Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. § 636(b)(1)(A), Rule 72(a), Fed.R.Civ.P.; Eastern Division Order No. 14-01, pt. IV(C)(3)(a). The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

 This order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.3.

          /s/ Terence P. Kemp
          United States Magistrate Judge