UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

WILMINGTON TRUST COMPANY,
et al.,

    **Plaintiffs,**

    v.

AEP GENERATING COMPANY,
et al.,

    **Defendants.**

Case No. 2:13-cv-1213
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

This matter is before the Court on Defendants AEP Generating Company and Indiana Michigan Power Company's (collectively, "Defendants") Objections [ECF No. 137] to the Magistrate Judge's October 23, 2015 Opinion and Order [ECF No. 132] compelling discovery of certain settlement communications from a prior case. Because the Magistrate Judge's decision contains no clear error and is not contrary to law, the Court **OVERRULES** Defendants' Objections [ECF No. 137].

### I.

Plaintiffs, various entities identified as "Wilmington Trust Company" acting as owner trustees of various trusts, sued Defendants alleging breach of contract, breach of covenant of good faith and fair dealing, and indemnification. (Feb. 13, 2015 Op. & Order at 1 [ECF No. 79].) This action relates to a facility that Plaintiffs leased to Defendants. Plaintiffs allege that Defendants breached this lease when they entered into and subsequently modified a consent decree in a separate environmental case that the United States Environmental Protection Agency had filed against Defendants. (*Id.*)


### A. Plaintiffs' Motion to Compel

Plaintiffs seek to compel discovery of communications regarding potential remedies and settlement that Defendants had in the separate environmental case. (*Id.* at 2.) Defendants opposed this motion, arguing that a federal "settlement communications privilege" shielded these communications. The Magistrate Judge rejected this argument, holding that state law governs privilege determinations in this diversity action and that no such privilege exists under the applicable state law. (*Id.* at 5.)

### B. Defendants' First Objections

Defendants objected to that conclusion on two grounds. (Defs.' First Objections at 4, 6 [ECF No. 80].) First, the Magistrate Judge did not apply a federal settlement privilege as mandated by *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003). (Defs.' First Objections at 4.) Second, assuming that *Goodyear* does not preempt Federal Rule of Evidence 501 in diversity cases, *Goodyear*'s settlement privilege still applies under a proper application of Rule 501. (*Id.* at 6.) The Court rejected Defendants first argument. "Because *Goodyear* never examined whether federal or state law applied under Rule 501, that decision did not establish binding precedent on that 'unexamined point.'" (July 6, 2015 Op. & Order at 3 [ECF No. 90].)[1] As to the second argument, the Court declined to render a decision

---

[1] Defendants' argument for the application of a federal settlement privilege has some merit. The Sixth Circuit recognized a settlement privilege in *Goodyear*—a case removed to federal court on the basis of diversity jurisdiction. 332 F.3d at 978, 980. As discussed in the July 6 Order, however, the Court declines to interpret *Goodyear* as establishing a federal settlement privilege applicable to all subsequent diversity actions. Such an interpretation would seem to contradict the clear language of Evidence Rule 501, which mandates the application of state privilege law in diversity actions: "The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege . . . . But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501; *see also Jaffee v. Redmond*, 518 U.S. 1, 17 n.15 (1996) (recognizing that state privileges apply under Rule 501 if "a state-law claim [is] asserted in federal court"); *Babcock & Wilcox Power Generation Grp., Inc. v. Cormetech, Inc.*, 81 F. Supp. 3d 632, 638–39 (N.D. Ohio 2015) ("[T]he federal settlement privilege recognized in *Goodyear* does not apply to a diversity case, such as this one, where Ohio law supplies the rule of decision."). Since deciding *Goodyear*, the Sixth Circuit has

2

because Defendants had not raised the issue before the Magistrate Judge. (*Id.* at 5–6.) The Court informed Defendants that they could raise the argument before the Magistrate Judge within fourteen days of the July 6 Order. (*Id.* at 6.)

C. **Defendants' Choice of Law Argument**

Defendants raised their second argument through a supplemental memorandum. (*See generally* Defs.' Suppl. Mem. [ECF No. 92].) Defendants contended that Evidence Rule 501 mandates the application of New York's choice of law rules. (*Id.* at 4 ("This Court must apply the same choice of law rules the Southern District of New York would apply [i.e., New York state rules], because this lawsuit was initially filed in the Southern District of New York and subsequently transferred here.").) According to Defendants, "New York courts routinely apply the law of the jurisdiction in which the privileged communications were made." (*Id.* at 5.) Two policy considerations drive New York's choice of law analysis: "(i) protecting the parties' expectation that communications made subject to privilege in one jurisdiction will remain privileged in others, and (ii) deferring to the foreign jurisdiction's interest in furthering the policies underlying its own privileges." (*Id.* at 7–8.) The settlement communications here "were rendered in a federal question case" pending in the Southern District of Ohio. (*See id.* at 6.) As such, New York's policy considerations purportedly mandate the application of the Southern District of Ohio's federal common law. (*See id.* at 5–6.) The Southern District's common law, in turn, incorporates *Goodyear*'s settlement privilege. (*See id.* at 6.)

---

reaffirmed Rule 501's mandate on several occasions. *See Maday v. Pub. Libraries of Saginaw*, 480 F.3d 815, 821 n.2 (6th Cir. 2007) (citing Fed. R. Evid. 501) ("To the extent that allegedly privileged evidence was relevant to Maday's *state-law* claims, the social-worker- and attorney-client privileges are governed by the law of the state of Michigan."); *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 296 n.1 (6th Cir. 2007) (citing Fed. R. Evid. 501) (explaining that the Federal Rules of Evidence "direct federal courts sitting in diversity to apply" state privilege law); *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006) (citing Fed. R. Evid. 501) ("In a diversity case, the court applies . . . state law to resolve attorney-client claims.").

3

Plaintiffs countered by stressing that Rule 501 requires the selection of state law, not federal common law. (Pls.' Suppl. Mem. at 5 [ECF No. 105].) Similarly, when applying a New York choice of law analysis, "New York courts uniformly choose state law to determine the existence and scope of an asserted privilege—and do not even consider supplanting state law with a conflicting principle of federal common law." (*Id.* at 9.) And even if a court might consider choosing federal common law under a New York choice of law analysis, Plaintiffs insisted that the policies and issues at play here would persuade the court to choose New York's privilege law. (*Id.* at 9–11.)

The Magistrate Judge rejected Defendants' choice of law argument. (Oct. 23, 2015 Op. & Order at 2 [ECF No. 132].) The Magistrate Judge agreed with Defendants that New York's choice of law rules determine the proper privilege law to apply. (*Id.* at 4.) He disagreed, however, with Defendants' conclusion that New York's choice of law rules would mandate the application of the Southern District of Ohio's common law of privilege. (*Id.* at 7.) Under New York choice of law rules, the law of the "locus state" (the state where a communication is made) typically controls on the issue of privilege. (*Id.* at 5.) Confronted with a conflict of laws analysis that emphasizes the geographic location of a communication as the predominant factor, the Magistrate Judge was "not inclined to break new ground" by "scrapp[ing] geography in favor of 'federal jurisdiction' whenever the communications at issue [are] made in the context of a federal lawsuit." (*Id.* at 7.) Under a geographic analysis, only two states could arguably supply the privilege law for this action: Ohio or New York. (*See id.* at 5.) But neither of those states recognizes a settlement privilege that would shield Defendants' communications from disclosure. (*See id.*) Applying federal common law rather than state law would also "seem to run directly contrary to [the Advisory Committee Notes'] persuasive description of Rule 501's intent

4

and purpose." (*Id.* at 7.)

With respect to the policy considerations allegedly underlying New York's choice of law analysis, the Magistrate Judge noted that "[f]ederal law, taken as a body, does not unequivocally favor a settlement communications privilege." (*Id.* at 7.) And it was, the Magistrate Judge noted,

> mere speculation as to whether Defendants actually relied on some notion that *Goodyear* would protect their settlement communications should they become involved in subsequent litigation where state law supplied the applicable rule of decision and Rule 501 directed the court to look to state law for guidance on what privileges to recognize.

(*Id.* at 8.) To the extent that Defendants did rely on *Goodyear*, that reliance "was not necessarily reasonable." (*Id.*)

**D.  Defendants' Second Objections**

Defendants have now objected again. (Defs.' Second Objections at 1 [ECF No. 137].) The Magistrate Judge's October 23, 2015 Order is allegedly (i) contrary to law "in that it failed to properly apply New York's choice of law rules" and (ii) clearly erroneous "in making a factual finding that Defendants' reliance on the settlement privilege was 'speculative.'" (*Id.*)

**II.**

Federal Rule of Civil Procedure 72(a) provides the procedural mechanism through which a party may obtain review of orders issued by a magistrate judge on nondispositive matters. The Rule provides that, in considering objections to such orders, the district judge "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). To establish that a magistrate judge's opinion is contrary to law, an aggrieved party must demonstrate that the conclusions ignore or contradict relevant precepts of law. *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992). The clearly erroneous standard, by contrast, applies only to factual findings made by

the magistrate judge. *Id.* A finding is clearly erroneous "when the reviewing court is left with a definite and firm conviction that a mistake has been committed." *In re Search Warrants Issued Aug. 29, 1994*, 889 F. Supp. 296, 298 (S.D. Ohio 1995).

### III.

The Court first considers Defendants' assertion that the Magistrate Judge acted contrary to law. The Court then addresses Defendants' argument that the Magistrate Judge made a clearly erroneous finding. Neither objection has merit.

A.  **The Magistrate Judge's Order Is Not Contrary to Law**

Defendants insist that the Magistrate Judge's Order is contrary to law because it did not properly apply New York's choice of law rules. The Court disagrees. The Magistrate Judge correctly applied New York's choice of law rules. Courts do not select common law privileges of federal jurisdictions under New York's choice of law rules. (*See* Oct. 23, 2015 Op. & Order at 5–8 [ECF No. 132].) And if a court were to consider federal common law under New York's choice of law rules, the court would likely choose Ohio or New York privilege law instead based on policy considerations. (*See id.* at 7–8.)

"Under New York's choice of law principles, the governing law is that 'of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation.'" *Lego v. Stratos Lightwave, Inc.*, 224 F.R.D. 576, 578 (S.D.N.Y. 2004). New York courts "apply an interest-balancing test to determine which state has the greatest interest in applying its law." *Condit v. Dunne*, 225 F.R.D. 100, 107 (S.D.N.Y. 2004). "In cases requiring a choice of privilege law, the interest analysis usually has led New York courts to apply the law of the jurisdiction in which the assertedly privileged communications were made." *Lego*, 224 F.R.D. at 579.

6

Defendants critique the Magistrate Judge's Order for its purported failure to recognize that New York courts can, and do, "apply federal common law privileges in cases arising under state law." (Defs.' Second Objections at 7 [ECF No. 137].) In making this argument, Defendants focus on the term "jurisdiction." Defendants' argument adheres to the following logic: (i) courts applying New York's choice of law rules routinely apply the law of the jurisdiction in which the privileged communications were made; (ii) the Southern District of Ohio is a jurisdiction; thus (iii) a court could apply the Southern District's federal common law under New York's choice of law rules. (*See* Defs.' Second Objections at 5.) Defendants support this argument with citations to several cases in which New York courts have purportedly applied federal common law privileges in cases arising under state law. (*Id.* at 7.) But none of the cited decisions undertakes an explicit choice of law analysis. Nor does any decision state that it has specifically chosen to apply federal common law.

In *MBIA Insurance Corp. v. Countrywide Home Loans, Inc.*, No. 602825/2008 (N.Y. Sup. Ct. June 4, 2012) ("*MBIA* (June)"), for example, the court applies a bank examiner privilege. The court, however, never clarified the source of the privilege—whether it exists under federal common law, under federal statutes and regulations, or under state law.[2] *MBIA* (June), No. 602825/2008, at 10–15; *cf. United States ex rel Fisher v. Ocwen Loan Servicing, LLC*, No. 4:12-cv-543, 2015 WL 3942900, at *5 (E.D. Tex. June 26, 2015) (acknowledging the bank examination privilege codified under New York Banking Law § 36(1)); *Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 978 F. Supp. 267, 273 (S.D.N.Y. 2013) (opining that the bank examiner privilege exists under federal common law but also acknowledging that "Congress

---

[2] If the bank examiner privilege exists under federal statutory or regulatory law, then states would likely be obligated to recognize it under the Supremacy Clause. *Cf. Powell v. Howard Bank, N.A. (In re Powell)*, 227 B.R. 61, 67 (Bankr. D. Vt. 1998) (assuming that Vermont law could incorporate the bank examiner privilege).

codified the common law bank examination privilege in the Freedom of Information Act"); *Gradeless v. Am. Mut. Share Ins. Corp.*, No. 1:10-cv-00086, 2011 WL 221895, at *6 (S.D. Ind. Jan. 19, 2011) ("A bank examination privilege is a creature of Indiana state statute and has been developed in the federal common law."). And, in fact, the *MBIA* (June) court's numerous citations to federal regulations imply that the court did not view the privilege as stemming from federal common law. *See MBIA* (June), No. 602825/2008, at 10–15; *see also* 12 C.F.R. § 4.37(b) (bank examiner privilege as applicable to the Office of the Comptroller of the Currency), § 261.20(g) (bank examiner privilege as applicable to the Federal Reserve System), § 309.6(a) (bank examiner privilege as applicable to the FDIC), and § 510.5(e)(2) (bank examiner privilege as applicable to the Office of Thrift Supervision). Similarly, the *MBIA* (June) court never explicitly considered an alternative source of privilege law and, thus, never actually applied New York's choice of law rules. *See MBIA* (June), No. 602825/2008, at 10–15. Given that the court did not apply New York's choice of law rules and, in any event, applied a privilege that likely originates in federal regulations rather than federal common law, *MBIA* (June) does not support Defendants' position.

Likewise, *MBIA Insurance Corp. v. Countrywide Home Loans, Inc.*, No. 602825/2008, 2012 WL 6162230, at *1–3 (N.Y. Sup. Ct. Dec. 10, 2012) and *AMBAC Assurance Corp. v. Countrywide Home Loans, Inc.*, No. 651612/2010, 2014 WL 1413990, at *1–7 (N.Y. Sup. Ct. Apr. 11, 2014), also fail to undertake a New York choice of law analysis or explain whether the bank examiner privilege exists under federal common law.

Courts that have actually applied New York's choice of law rules in the privilege context have limited their consideration to states and countries.[3] *See, e.g.*, *Chin v. Rogoff & Co., P.C.*,

---

[3] In his Order, the Magistrate Judge implies that courts applying New York choice of law rules would only select the privilege law of a geographic location, such as a state or a country. (*See* Oct. 23, 2015 Op.

No. 05 Civ. 8360, 2008 WL 2073934, at *4–5 (S.D.N.Y. May 8, 2008) (choosing New York law under a choice of law analysis); *Lego v. Stratos Lightwave, Inc.*, 224 F.R.D. 576, 578–79 (S.D.N.Y. 2004) (choosing between Illinois and California law); *A.I.A. Holdings, S.A. v. Lehman Bros. Inc.*, No. 97 Civ. 4978, 1999 WL 61442, at *6 (S.D.N.Y. Feb. 3, 1999) (looking to Lebanese law under a choice of law analysis); *Tartaglia v. Paul Revere Life Ins. Co.*, 948 F. Supp. 325, 326–27 (S.D.N.Y. 1996) (choosing between New York and Ohio law); *Stephens v. Am. Home Assur. Co.*, No. 91 Civ. 2898, 1995 WL 230333, at *6–7 (S.D.N.Y. Apr. 17, 1995) (choosing between New York, New Jersey, and Kentucky law); *Bamco 18 v. Reeves*, 685 F. Supp. 414, 415–16 (S.D.N.Y. 1988) (choosing between New York and Maryland law); *Mazzella v. Phila. Newspapers, Inc.*, 479 F. Supp. 523, 526–27 (E.D.N.Y. 1979) (choosing between New York and Pennsylvania law); *Bear, Stearns & Co., Inc. v. McKesson Corp.*, No. 604304/2005, 2007 WL 7126572, at *4 (N.Y. Sup. Ct. May 16, 2007) (choosing California law under a choice of law analysis); *Delta Fin. Corp. v. Morrison*, No. 011118/2003, 2006 WL 3068853, at *4, (N.Y. Sup. Ct. Oct. 24, 2006) (choosing between New York, Florida, and South Carolina law); *Brandman v. Cross & Brown Co.*, 479 N.Y.S.2d 435, 436–37 (N.Y. Sup. Ct. 1984) (choosing between New York and Florida law). The Court is unaware of any cases in which a court applying New York's choice of law rules in the privilege context has considered choosing federal common law.

Defendants point to this dearth of case law as support for the notion that New York's choice of law rules allow for the application of federal common law. (Defs.' Second Objections at 8 & n.4 [ECF No. 137].) Granted, the issue could be one of first impression. New York courts

---

& Order at 5–7 [ECF No. 132].) In response, Defendants insist that federal districts, such as the Southern District of Ohio, constitute geographic locations. (Defs.' Second Objections at 6–7.) The Court need not resolve this issue. Regardless of the reason, courts applying New York choice of law rules in the privilege context have, to date, not considered federal common law.

9

might, if given the opportunity, determine that the state's choice of law rules permit the application of federal common law privileges. But, as of now, no New York court has addressed the issue. And the lack of case law rejecting the application of federal common law does not establish that New York courts would apply federal common law under the state's choice of law rules. For this Court to set aside the Magistrate Judge's Order as contrary to law, Defendants must demonstrate that the Order's conclusions ignore or contradict relevant precepts of law. *Gandee*, 785 F. Supp. at 686. Here, Defendants have not identified a relevant precept of law. Rather, Defendants speculate that New York courts might apply federal common law under the state's choice of law rules. Such speculation is not sufficient to overturn the Magistrate Judge's well-reasoned Order.

Defendants also object that "the Magistrate Judge did not attempt to identify the jurisdiction in which the relevant settlement communications were made." (Defs.' Second Objections at 6.) But as the Magistrate Judge indicated, New York's choice of law rules would reject the application of federal common law and likely yield either Ohio or New York as the state supplying privilege law for this case. (*See* Oct. 23, 2015 Op. & Order at 5–7.) The Magistrate Judge had no obligation to further narrow his analysis given that neither state recognizes a settlement communications privilege. (*See id.* at 5; Feb. 13, 2015 Op. & Order at 5 [ECF No. 79].)

Finally, Defendants contend that the Magistrate Judge's Order contradicts the policy considerations underlying New York's choice of law analysis.[4] According to Defendants, the Magistrate Judge (i) did not give proper consideration to a declaration explaining Defendants' reliance on the *Goodyear* settlement privilege and (ii) effectively overruled *Goodyear* and subverted the policies underlying the settlement privilege by refusing to recognize the privilege.

---

[4] The policy considerations cited by Defendants are listed above on page three.

10

(Defs.' Second Objections at 9–13.)

Defendants' policy argument is somewhat misplaced. True, courts applying New York's choice of law rules in the privilege context likely recognize the policy considerations highlighted by Defendants. But those considerations are not controlling; they represent one part of a broader interest-balancing test used to determine "which state has the greatest interest in applying its law." *Condit*, 225 F.R.D. at 107. Accordingly, Defendants' objections fail. The Magistrate Judge adequately considered Defendants' alleged reliance on the settlement privilege. The Magistrate Judge was under no obligation to craft an order protecting Defendants' expectation that their settlement communications would remain privileged under *Goodyear*. Nor was the Magistrate Judge obliged to even accept Defendants' reliance on the settlement privilege. Similarly, the Magistrate Judge did not act contrary to law by refusing to recognize a settlement privilege. New York's choice of law rules do not mandate blind deference to the policies underlying *Goodyear*'s settlement privilege. The Magistrate Judge considered the policies underlying the privilege, just as he considered the negative consequences associated with recognizing the privilege. (*See* Oct. 23, 2015 Op. & Order at 8 (citing *In re MSTG, Inc.*, 675 F.3d 1337, 1342–43 (Fed. Cir. 2012)).) The Magistrate Judge's Order is not contrary to law.

**B. The Magistrate Judge's Order Is Not Clearly Erroneous**

Defendants contend that the Magistrate Judge's Order is clearly erroneous because it "failed to consider the McManus Declaration, . . . pursuant to which Mr. McManus declared under oath that as a member of the Executive Management and Legal Team he engaged in the subject settlement communications and was aware of, and relied on, the settlement privilege." (Defs.' Second Objections at 3.) At issue is the Magistrate Judge's statement that it was "mere speculation" as to whether Defendants actually relied on *Goodyear*'s settlement privilege. (*See*

11

Oct. 23, 2015 Op. & Order at 8.) Defendants essentially argue that a magistrate judge errs if he assesses the strength of a party's evidence when considering a motion to compel.

Even if the Magistrate Judge were to fully credit Defendants' assertion that they relied on *Goodyear*'s settlement privilege, such a finding would not mandate a different conclusion regarding the correct privilege law to apply in this case. As noted above, reliance on a privilege is not a controlling factor under New York's choice of law rules. It is one factor of a broader test. Moreover, Defendants' objections fall short irrespective of the reliance issue. Specifically, Defendants have failed to establish that a New York court applying the state's choice of law rules would even undertake an interest-balancing test here. New York courts have applied interest balancing tests to choose between the privilege law of states and countries—not the common law privileges of federal districts and circuits.

## IV.

For the reasons stated above, the Court **OVERRULES** Defendants' Objections [ECF No. 137] to the Magistrate Judge's October 23, 2015 Opinion and Order [ECF No. 132].

**IT IS SO ORDERED.**

1-4-2016
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**